UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

ANN MARIE SHERWOOD-WILLIS,

                Plaintiff,

                      v.

COMMISSIONER,

                Defendant.

**Hon. Hugh B. Scott**

**17CV1177**

**CONSENT**

**Order**

Before the Court are the parties' respective motions for judgment on the pleadings (Docket Nos. 10 (plaintiff), 17 (defendant Commissioner)). Having considered the Administrative Record, filed as Docket No. 5 (references noted as "[R. __]"), and the papers of both sides, this Court reaches the following decision.

## INTRODUCTION

This is an action brought pursuant to 42 U.S.C. § 405(g) to review the final determination of the Commissioner of Social Security that plaintiff is not disabled and, therefore, is not entitled to disability insurance benefits. The parties consented to proceed before a Magistrate Judge (Docket No. 11).

## PROCEDURAL BACKGROUND

The plaintiff ("Ann Marie Sherwood-Willis" or "plaintiff") filed an application for disability insurance benefits on October 16, 2013 [R. 22]. That application was denied initially. The plaintiff appeared before an Administrative Law Judge ("ALJ"), who considered the case <u>de</u>

novo and concluded, in a written decision dated May 19, 2016, that the plaintiff was not disabled within the meaning of the Social Security Act. The ALJ's decision became the final decision of the Commissioner on September 22, 2017, when the Appeals Council denied plaintiff's request for review.

Plaintiff commenced this action on November 17, 2017 (Docket No. 1). The parties moved for judgment on the pleadings (Docket Nos. 10, 17), and plaintiff duly replied (Docket No. 18). Upon further consideration, this Court then determined that the motions could be decided on the papers.

## FACTUAL BACKGROUND

Plaintiff, a 51-year-old with an Associate's degree, last worked as a dental hygienist for 20 years [R. 44]. Plaintiff claims disability as of the onset date of October 27, 2010 [R. 22]. Plaintiff claims the following impairments deemed severe by the ALJ: degenerative disc disease of cervical spine status-post ACDF (Anterior Cervical Discectomy and Fusion) [R. 24]. Plaintiff also claimed other ailments not deemed to be severe by the ALJ, including hypothyroidism/goiter (the ALJ concluding that this does not add to impairments, with little testimony or treatment); non-ischemic cardiomyopathy (the ALJ deemed to be stable) [R. 24]; and adjustment disorder with anxiety and use of psychotropic drugs [R. 25]. As for the adjustment disorder with anxiety, the ALJ found that the "Paragraph B" criteria functional areas were no more than mild [R. 25].

## MEDICAL AND VOCATIONAL EVIDENCE

Plaintiff testified that she had headaches daily and pain in her shoulders and numbness and tingling on the right side [R. 26, 45]. She said that her symptoms were no better after her

2

surgery, that she used hydrocodone, lidocaine ointment, and ice to relieve pain [R. 26, 45, 47]. She was advised in 2014 to work three days a week (Monday, Tuesday, Thursday) to give her body a rest [R. 46]. She testified that she could only lift 10 pounds, sit for no more than 40 minutes before needing to stand, and stand for no more than 40 minutes before needing to lie down and that these limitations have been ongoing since October 2010 [R. 26, 49-50]. Plaintiff testified that she used the treadmill and elliptical for thirty minutes daily and had taken multiple vacations to Mexico (three times) and the Dominican Republic (once) in the four years prior to the ALJ's decision [R. 27, 52-53, 55-56]. Plaintiff said she stayed on the resort properties "relaxed, sat in the sun, [and] sat on the beach" [R. 56]. While traveling, plaintiff made sure the trips were direct flights and with minimal layovers [R. 57]. The ALJ used this travel as proof of plaintiff's functioning [R. 27]. Plaintiff also denied jogging [R. 53]. Plaintiff's daily activities included preparing meals, tending to pets, shopping, doing laundry, and light housework [R. 27].

Plaintiff's cardiologist, Dr. Dennis Chugh, recommended continued exercise [R. 27, 671] and plaintiff was prescribed a personal trainer and a gym membership [R. 27, 669]. The evidence also noted that plaintiff did volunteer work with canine therapy several times monthly, has a personal trainer three times weekly and rides a bike in warm weather [R. 28, 688, 689, 746]. Independent medical examiner Dr. Joshua Auerbach noted that plaintiff volunteered part time with canine therapy at Women's and Children's Hospital one to two times a month for about 45-60 minutes [R. 759]. Despite plaintiff's aggravation of her cervical disc disease, Dr. Auerbach opined that she was capable of light work [R. 762], that plaintiff could lift 30 pounds occasionally and 10 pounds frequently [R. 763].

Dr. James Egnatchik, on April 29, 2015, concluded that plaintiff was 75% marked permanent disability and was the 10% of patents that did not improve after anterior cervical discectomy surgery [R. 688]. Earlier, on July 2013, Dr. Egnatchik advised that plaintiff could not sit for greater than 30 minutes, stand longer than an hour, could not drive for more than 30 minutes, or work overhead [R. 292].

A surveillance video [see R. 745, 761] of plaintiff for various dates between August 2011 and July 2013 was shown to some of the examiners, showing plaintiff jogging and biking for two hours [R. 27, 28, 684-85]. Dr. Louis Medved[1], an independent medical examiner who saw this video, found that these activities were inconsistent with plaintiff's subjective complaints [R. 28, 685, 761]. Dr. Medved concluded that the only factor preventing plaintiff from returning to work is her subjective complaints of pain [R. 685].

The ALJ found that plaintiff had a residual functional capacity light work, except plaintiff is never to climb ladders, ropes and scaffolds; can occasionally perform overhead reaching (bilateral limitation), can frequently perform handling and fingering with the right dominant upper extremity; must avoid concentrated exposure to hazardous conditions such as unprotected heights and dangerous machinery [R. 25].

The ALJ (assisted by the vocational expert) found that plaintiff was able to perform past relevant work as a dental hygienist (an exertionally light, skilled occupation) as compared with her residual functional capacity [R. 29-30]. The ALJ posed two hypotheticals to the vocational expert; the first was that the claimant could perform light work, and the second added the limitation about frequent handling and fingering with her right hand; the expert opined that this

---

[1] Erroneously identified in the record as Dr. "Meved" [R. Index 3, identifying Ex. 24F], see also Docket No. 17, Def. Memo. at 7.

4

claimant could resume work as a dental hygienist [R. 59-60].   With this capacity and the additional limitations for light work, the vocational expert outlined transferable skills from plaintiff's past relevant work and opined that a hypothetical claimant like plaintiff was able to perform such sedentary occupations as an information clerk, telephone solicitor, or an order filler [R. 30-31, 61-62].   The ALJ amended the hypotheticals to make the claimant off task 20% of the time due to symptoms or unscheduled breaks or miss three days a month and the expert concluded that the claimant still could perform the essential functions of the job [R. 62-63].   The ALJ posed a further amended hypothetical, adding that claimant's ability to stand and/or walk or to sit during less than an 8-hour workday the expert concluded that it would rule out all work on a full-time basis [R. 63].

As a result, the ALJ held that plaintiff was not disabled [R. 31].

## DISCUSSION

The only issue to be determined by this Court is whether the ALJ's decision that the plaintiff was not under a disability is supported by substantial evidence.   See 42 U.S.C. § 405(g); Rivera v. Sullivan, 923 F.2d 964, 967 (2d Cir. 1991).   Substantial evidence is defined as "'more than a mere scintilla.   It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"   Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. National Labor Relations Bd., 305 U.S. 197, 229 (1938)).

*Standard*

For purposes of both Social Security Insurance and disability insurance benefits, a person is disabled when unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which

has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A).

Such a disability will be found to exist only if an individual's "physical or mental impairment or impairments are of such severity that [he or she] is not only unable to do [his or her] previous work but cannot, considering [his or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. §§ 423(d)(2)(A) & 1382c(a)(3)(B).

The plaintiff bears the initial burden of showing that the impairment prevents the claimant from returning to his or her previous type of employment. Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982). Once this burden has been met, "the burden shifts to the [Commissioner] to prove the existence of alternative substantial gainful work which exists in the national economy and which the plaintiff could perform." Id.; see also Dumas v. Schweiker, 712 F.2d 1545, 1551 (2d Cir. 1983); Parker v. Harris, 626 F.2d 225, 231 (2d Cir. 1980).

To determine whether the plaintiff is suffering from a disability, the ALJ must employ a five-step inquiry:

(1) whether the plaintiff is currently working;

(2) whether the plaintiff suffers from a severe impairment;

(3) whether the impairment is listed in Appendix 1 of the relevant regulations;

(4) whether the impairment prevents the plaintiff from continuing past relevant work; and

(5) whether the impairment prevents the plaintiff from doing any kind of work.

20 C.F.R. §§ 404.1520 & 416.920; Berry, supra, 675 F.2d at 467. If a plaintiff is found to be either disabled or not disabled at any step in this sequential inquiry, the ALJ's review ends.

6

20 C.F.R. §§ 404.1520(a) & 416.920(a); Musgrave v. Sullivan, 966 F.2d 1371, 1374 (10th Cir. 1992). However, it should be noted that the ALJ has an affirmative duty to fully develop the record. Gold v. Secretary, 463 F.2d 38, 43 (2d Cir. 1972).

Under agency regulations, "light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls," 20 C.F.R. § 404.1567(b).

To determine whether an admitted impairment prevents a claimant from performing past work, the ALJ is required to review the plaintiff's residual functional capacity and the physical and mental demands of the work that has done in the past. 20 C.F.R. §§ 404.1520(e) & 416.920(e). When the plaintiff's impairment is a mental one, special "care must be taken to obtain a precise description of the particular job duties which are likely to produce tension and anxiety, e.g. speed, precision, complexity of tasks, independent judgments, working with other people, etc., in order to determine if the claimant's mental impairment is compatible with the performance of such work." See Social Security Ruling 82-62 (1982); Washington v. Shalala, 37 F.3d 1437, 1442 (10th Cir. 1994). The ALJ must then determine the individual's ability to return to past relevant work given the claimant's residual functional capacity. Washington, supra, 37 F.3d at 1442.

*Application*

In the instant case, the issue is whether the ALJ had substantial evidence to support the decision rendered denying disability coverage. First, plaintiff complains that the ALJ erred by

7

discounting the opinions of her treating physicians, Dr. James Egnatchik and Dr. Lisa Hoffman (Docket No. 10, Pl. Memo. at 13-18). Next, plaintiff argues that the residual functional capacity did not include restrictions for reaching, neck movement, and for working less than full-time work (id. at 18-22). Plaintiff contends that the ALJ did not properly weigh her subjective complaints (id. at 22-25). Finally, plaintiff objects to the ALJ transferring her dental hygienist skills to clerical or customer service skills (id. at 25-27).

This case turns upon the reliance of the ALJ on a surveillance video and at least one independent examining physician's opinion.

I.  Plaintiff's Treating Sources

A.  Dr. Egnatchik

Dr. Egnatchik was plaintiff's treating spine surgeon. The doctor assessed plaintiff as 75% disabled [R. 28, 291-92, 688-89, 732, 784], although plaintiff's physical examinations were normal and the doctor noted plaintiff's subjective complaints (Docket No. 17, Def. Memo. at 15). The doctor then opined that plaintiff could perform sedentary work other than her past work as a dental hygienist [R. 685]. The ALJ gave "only some weight" to the doctor's opinion since it was not consistent with the medical evidence of record and plaintiff's reported activities of daily living, including those depicted in a surveillance video [R. 28] (Docket No. 10, Pl. Memo. at 13).

Plaintiff now argues that the ALJ's "boilerplate statement" that the doctor's statement was not entirely consistent with the medical evidence is not a good reason for rejecting a treating source's opinion (Docket No. 10, Pl. Memo. at 16, see Knorr v. Colvin, No. 15CV6702, 2016 WL 4746252, *14 (W.D.N.Y. Sept. 13, 2016) (Telesca, J.)). As for the so-called

surveillance video, plaintiff points out that the video was not included as part of the administrative record (id.), see Ross v. Verizon Communications, Inc., 837 F. Supp. 2d 28, 50-51 (N.D.N.Y. 2011). The video was from fifteen days from August 11, 2011, to July 5, 2013 (id.; [R. 684]), which plaintiff argues fails to demonstrate regular and consistent activity (Docket No. 10, Pl. Memo. at 16). She testified that the bicycle she rode was specially designed to minimize her bending or reaching far with her arms (Docket No. 10, Pl. Memo. at 16; [R. 53]).

    B.    Dr. Hoffman

Dr. Hoffman, plaintiff's primary care physician, in May 2015 concluded that plaintiff could not return to her previous profession [R. 28, 507-11, 756]. The ALJ gave this opinion less weight [R. 28], reviewing Dr. Hoffman's treatment notes and finding evidence that the doctor was aware of plaintiff's activities, such as plaintiff travels to the Dominican Republic and plaintiff's extensive exercises [R. 28-29, 693]. The ALJ found that "the independent medical examiners to have had a better overall view of the claimant's combined issues and function than do the treating providers" [R. 29]. The ALJ also noted that the providers were not aware of plaintiff's "regular travels" or details revealed in the surveillance video [R. 29].

Plaintiff argues that her exercise and going on trips would not necessitate rejecting Dr. Hoffman's opinion and it is improper to reject a medical opinion based upon occasional trips (Docket No. 10, Pl. Memo. at 17), Doyle v. Apfel, 105 F. Supp. 2d 115, 120 (E.D.N.Y. 2000). Plaintiff construes Dr. Hoffman's awareness of plaintiff's activities as informing Dr. Hoffman's treatment findings, that Dr. Hoffman advised plaintiff to be more active (id.).

9

C. Consideration of Treating Sources' Opinions

These medical opinions were generated before March 2017 and the change in Social Security regulations. Pertinent to this case is the treating physician's rule (as of May 2016)[2], wherein a treating physician's opinion should be given controlling weight where it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques," and is not inconsistent with the other substantive evidence of record, 20 C.F.R. § 404.1527(c)(2) (2016). If not given controlling weight, the ALJ must provide good reasons for not crediting it, McCarthy v. Colvin, No. 13CV6467, 2014 WL 6065675, at *7 (W.D.N.Y. Nov. 13, 2014) (Telesca, J.); see Sanders v. Comm'r of Soc. Sec., 506 F. App'x 74, 77 (2d Cir. 2012). If not giving the controlling weight to the treating physician's opinion, the ALJ then needs to consider various factors in assessing that opinion, such as the examining relationship, its extent, medical support for the opinion, its consistency, and the physician's specialization, and other relevant factors, 20 C.F.R. § 404.1527(c) (2016).

Both of plaintiff's personal doctors concluded that she could not return to work as a dental hygienist. The ALJ (and by extension, the vocational expert) [R. 30] **erred** in finding that plaintiff could resume that job based on her residual functional capacity. The hypotheticals posed to the vocational expert presumed light work, that is the ability to lift 20 pounds and stand and walk for a good deal of time, 20 C.F.R. § 404.1567(b).

The ALJ in effect rejected these medical opinions based upon a surveillance video [R. 28] that was shown to consulting examiners but not included in this record. The ALJ also relied

---

[2]The Social Security Administration issued new regulations surrounding the acceptable medical sources and how to consider medical opinions, 82 Fed. Reg. 15,132 (Mar. 27, 2017), 82 Fed. Reg. 5,844 (Jan. 18, 2017), effective for claims filed on or after **March 27, 2017**. Docket No. 19, Def. Memo. at 20 n.2.

upon plaintiff's vacations as grounds for activities of daily living that belie plaintiff's complaints and her medical opinions. When plaintiff traveled and cycled, she took efforts to minimize the impact on her body from the activities (by scheduling flight to avoid layovers, staying on the beach once in Mexico or the Dominican Republic, using an adjusted bicycle). Taking occasional trips is "not indicative of an ability to satisfactorily perform a job, much less plaintiff's previous job," Doyle, supra, 105 F. Supp. 2d at 120.

Dr. Louis Medved, independent medical examiner, on February 9, 2015, found that "claimant's physical functional capacity is in the light range, adequate to function as a dental hygienist. She can work 6 hours per day." [R. 685.] This is despite a report from Janet Kraft of Buffalo Ergonomics and Rehabilitation Services of July 2013 that Dr. Medved reviewed that indicated that the job of dental hygienist was listed as sedentary, "the postural demands of the job are not within claimant's safe physical abilities at this time" [R. 683]. The ALJ noted that Dr. Medved saw the surveillance video which showed plaintiff jogging and biking for two hours; Dr. Medved concluded that these activities were inconsistent with plaintiff's subjective complaints [R. 28, 684, 685]. The ALJ gave "significance" to Dr. Medved's opinion [R. 28]. The parties differ in their interpretation of Dr. Medved's opinion. Plaintiff claims that plaintiff can work only up to six hours and thus could not perform light work (Docket No. 10, Pl. Memo. at 18). Defendant argues that plaintiff was not limited to up to six hours, but that plaintiff could work as a dental hygienist (Docket No. 17, Def. Memo. at 18). But Dr. Medved's opinion is based upon a video that is not part of the overall record.

The ALJ lacks substantial evidence in determining that plaintiff could return to work as a dental hygienist in the face of her physicians finding that she could not. The ALJ cannot rely

upon a surveillance video that was not part of the administrative record, Ross, supra, 837 F. Supp. 2d at 50-51 (disability pension action under ERISA); see also Hubbard v. Barnhart, 225 F. App'x 721, 722-23 (9th Cir. 2007) (where Commissioner disclosed video in list of exhibits, admission of surveillance video into evidence in hearing did not violate claimant's due process rights); Schneiderman v. Colvin, No. 2:14-CV-00120-JTR, 2015 WL 3562582, at *10-11 (E.D. Wash. June 5, 2015) (Rogers, Mag. J.) (in rejecting surveillance video to undermine claimant's credibility, ALJ's reliance upon video deemed "troubling" because the video itself was not in the record only descriptions of the video written by two doctors), or upon plaintiff's occasional vacations. Further, the ALJ contends that the treating physicians were not informed about the surveillance or plaintiff's travel thus giving Dr. Medved's and another independent medical examiner's opinion [R. 759-65] more weight [R. 29]. Dr. Hoffman noted plaintiff's trip to the Dominican Republic [R. 693] (acknowledged by the ALJ, [R. 28-29]) and plaintiff herself being aware of the surveillance [R. 745, Oct. 8, 2015, examination].

On this basis, plaintiff's motion (Docket No. 10) is **granted**.

At least one of these doctors, however, did find that plaintiff could perform sedentary work [R. 685]. The vocational expert opined that plaintiff could perform such sedentary jobs as information clerk, telephone solicitor, or order filler based upon the hypotheticals that had a claimant who was able (with some limitations) to perform light work. When given the last hypothetical restricting time for standing, walking, or sitting, the expert concluded that that claimant could not work full time [R. 63]; the expert was not asked (and did not opine) on whether a claimant could perform these jobs in general. On remand, plaintiff's capabilities to perform sedentary work should be examined.

II.    Residual Functional Capacity

Plaintiff next argues that the residual functional capacity should have included restrictions for below the shoulder reaching, neck movement, and limitations to less than full-time work (Docket No. 10, Pl. Memo. at 18-22). As for the full-time work, this Court above noted the parties' different interpretations of Dr. Medved's opinion whether plaintiff could work for 6 hours or up to 6 hours (compare Docket No. 10, Pl. Memo. at 18 with Docket No. 17, Def. Memo. at 18). Defendant relies upon Dr. Medved's opinion that plaintiff could return to her prior work to justify the residual functional capacity reached by the ALJ (Docket No. 17, Def. Memo. at 18). Since this Court disagrees and finds error in relying upon the conclusion that plaintiff could return to work as a hygienist, the ALJ erred in reliance on Dr. Medved's contrary opinion.

III.   Plaintiff's Subjective Complaints

Plaintiff contends that the ALJ erred in weighing her subjective complaints (Docket No. 10, Pl. Memo. at 22-25). As previously noted, Dr. Medved opined that the only restraint for plaintiff returning to work as a hygienist is her subjective complaints of pain [R. 685]. As noted above, this is an area that should be reconsidered on remand.

IV.    Transferability of Skills

Plaintiff finally complains that the ALJ erred in finding that her past work as a dental hygienist had clerical or customer service transferrable skills that the vocational expert then opined in stating additional occupations a hypothetical claimant like her could perform (Docket No. 10, Pl. Memo. at 25-27). In reply, plaintiff stresses that the ALJ erred in finding skills are transferable without substantial evidence that she in fact acquired those skills (Docket No. 18, Pl.

Reply Memo. at 3), see Cahill v. Colvin, No. 12 Civ. 9445, 2014 WL 7392895, at *30 (S.D.N.Y. Dec. 29, 2014). The first two hypotheticals to the vocational expert supposed that plaintiff's skills as a hygienist would be transferable to other, sedentary jobs [R. 61].

Transferability of skills is governed by 20 C.F.R. § 404.1568(d) and depend upon whether the past work was skilled or semi-skilled and the type of work involved, § 404.1568(d)(1), this is without regard whether the claimant can perform the past work or not. Therefore, this is an issue that may be considered on remand and may inform which sedentary positions plaintiff could perform in her present condition.

## CONCLUSION

For the foregoing reasons, plaintiff's motion (Docket No. 9) judgment on the pleadings is **granted**, and defendant's motion (Docket No. 13) for judgment on the pleadings is **denied**. Thus, the decision of the defendant Commissioner is **vacated and remanded** for further proceedings consistent with the above decision to find additional facts, pursuant to sentence four of 42 U.S.C. § 405(g), see Curry v. Apfel, 209 F.3d 117, 124 (2d Cir. 2000). The Clerk of the Court shall close this case.

So Ordered.

*s/Hugh B. Scott*
Hon. Hugh B. Scott
United States Magistrate Judge

Buffalo, New York
April 17, 2019